JOHN SCOTT *v.* STATE OF MARYLAND

[No. 82, September Term, 1967.]

*Decided January 11, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John G. Hennegan* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Edward D. Waters, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was convicted in the Circuit Court for Baltimore County, before Judge John N. Maguire, presiding without a jury, of the offenses of carnal knowledge and assault and battery charged under indictment No. 31410 and incest charged under indictment No. 31411. He was sentenced to imprisonment for a term of 2 years on the conviction of carnal knowl-

edge, for a term of 1 year on the conviction of assault and battery, concurrent with the first sentence and for a term of 5 years on the conviction of incest, consecutive with the first sentence.

Under the title "Incest", Art. 27, § 335 of the Maryland Code (1967 Repl. Vol.) proscribes a person knowingly having carnal knowledge of another person, being within the degrees of consanguinity within which marriages are prohibited by law in Maryland. Md. Code (1964 Repl. Vol.) Art. 62, § 2 provides, among other prohibitions, that a man shall not marry his daughter. Code, Art. 27, § 464 proscribes the carnal knowledge by any person, except male persons under the age of 18 years, of any female not his wife, between the ages of 14 and 16 years. Carnal knowledge and sexual intercourse are synonymous (*Clark and Marshall, Law of Crimes,* 6th Ed. § 11.01, p. 675), the ancient term for the act itself being "carnal knowledge" (*4 Bl. Comm.* 210). So at common law, rape was the act of a man having unlawful carnal knowledge of a female over the age of 10 years by force without the consent and against the will of the victim. *Hazel v. State,* 221 Md. 464. Sexual intercourse, and thus carnal knowledge, judicially defined, "means actual contact of the sexual organs of a man and woman and an actual penetration into the body of the latter." *Robert v. State,* 220 Md. 159, quoting *State v. Diamond* 264 P. 697 (Nev.). Therefore, penetration is an essential element of the crime of rape at common law. *Craig v. State,* 214 Md. 546. An unlawful sexual intercourse with a girl under the age of consent, commonly known as "statutory rape", is often characterized as "carnal knowledge and abuse" (*Perkins on Criminal Law* [1957], ch. 2, § 5, p. 113), as in Code, Art. 27, § 462. The Court of Appeals has assumed that penetration is also an essential element of statutory rape. *Edmondson v. State,* 230 Md. 66; *Smith v. State,* 224 Md. 509; *Robert v. State, supra.* As the term "carnal knowledge" is used in Code, Art. 27, § 335 (incest) and § 464 (carnal knowledge of a female between the ages of 14 and 16 years) as it is in § 462, we assume that penetration is also an essential element of those crimes. But emission is not an essential element. It is not embraced within the definition of sexual intercourse (carnal knowledge) above

and is not required to be proved to establish rape by the provisions of Art. 27, § 461, prescribing the penalty for that crime. Thus the facts necessary to be proved to convict the appellant of the offense of incest were that he:

1) knowingly engaged in sexual intercourse, as defined,
2) with a person, being within the degrees of consanguinity within which marriages are prohibited in Maryland.

The facts necessary to be proved to convict the appellant of the offense of carnal knowledge as charged were that he:

1) was 18 years of age or over;
2) engaged in sexual intercourse, as defined, with a female, who:
 a) was not his wife; and
 b) was between the ages of 14 and 16 years.

"For this Court to reverse a judgment entered in a case tried by the lower court without a jury, it must be shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt." *Crum and Dunbar v. State,* 1 Md. App. 132, 135, quoting *McCray v. State,* 236 Md. 9, 15. In the instant case we think there was such evidence.

It was uncontradicted that the prosecutrix was the daughter of the appellant and that she had attained her fourteenth birthday on January 15, 1966. It is a rational inference from the age of the prosecutrix that the appellant was over the age of 18 years. The real contention with respect to the evidence is that the act of sexual intercourse was not proved in that the testimony of the prosecutrix was not worthy of belief, and, even if believed, that penetration was not proved.

The prosecutrix testified that she left her house about 10:30 P. M. on October 23, 1966 with her father and two brothers, the older of whom, Tommy, was 13 years old. They drove in the appellant's automobile to a tavern. The younger brother was asleep and the appellant told Tommy to go to sleep. The appellant and the prosecutrix went into the tavern where the

appellant drank a beer and the prosecutrix drank a soda. The appellant told his daughter that the brakes on the car were not working and gave her a dime to call her aunt. Then, "we walked down into the glade and he took me into the woods a few feet and took my clothes down, and my slacks, my girdle and my underwear down to my knees and put his - - - he laid on top of me, and I tried to get loose, and he slapped me. And, I didn't get loose until he kicked me - - - I mean, I kicked him." He put his penis "all the way into me * * * I was trying to get loose and even got up and he smacked me, threw me on the ground again, and I kicked him to get loose and he grabbed hold of my arm and told me to get back into the car; and go with my brothers and go to my aunt's, but I didn't go up, we went to the house and he was down there. And, he beat Tommy for telling my mother and he beat Tommy, and she went and called the police." On cross-examination she said that she was in the woods with the appellant for two hours and a half and that he was on top of her for that length of time. In response to a question "Now did he have his organ in you for that length of time?" she answered, "Yes." On redirect examination, however, she indicated she did not "have the proper conception of the amount of time" she was with her father. She further said that she did not bleed, had no marks on her face or on her throat and neck and that there were no bruises or marks on her anywhere as a result of the incident.[1] On cross-examination the prosecutrix denied that she had admitted, at the preliminary hearing, to having intercourse with other men and boys before. A police officer testified that he was not sure whether she said, at the preliminary hearing, that two boys once had attempted to have intercourse with her or that they did

---

1. The prosecutrix was examined by a physician shortly after the incident. Although the State agreed to stipulate that "what the police report as far as the examination was is what the doctor said," the record does not disclose that a stipulation, police report or a report of examination were proffered or admitted in evidence, nor did the doctor testify. In argument to the trial court, counsel for the appellant stated, "The police report says 'Dr. Tse (apparently the examining physician) examined Shirley (the prosecutrix) and examination showed no sperm and no signs of injury.'"

have intercourse with her. When cross-examined on this subject at the trial, the brother, Tommy, said that at the preliminary hearing she said she had had "bad relations" with boys or men other than the father, but he did not know the meaning of sexual intercourse and defined "bad relations" at one point as meaning, "they don't like each other." Tommy testified that they went to the tavern, that the younger brother was asleep, that the father told him to go to sleep and that when his father and sister came out of the tavern, the father gave "her a dime to go call some place, and he grabbed her arm and jumped on her." His brother woke up and he and his brother walked back to their house. He did not see anything else. He told his mother what happened and she called the police. His father came home and beat him for telling his mother. A police officer testified that the condition of her clothes when he saw her shortly after the incident were "good" and did not contain "any dirt or mud" and that he did not notice any bruises on her face and neck. Another officer testified that her clothes were "messed up a little bit * * * appeared a little wet but mostly wrinkled" and were not torn. There was testimony by the police that when they were in her house and asked the prosecutrix whether "anything had happened between her and her father" she shook her head indicating that it had not. They took her outside and when the sergeant arrived they asked her again "and she said that she had been raped, so we asked the girl if she was sure she was raped or were you assaulted by your father placing his hands, or intercourse, and the girl said that specifically, intercourse. Her father had put it all the way in her." She said she had not told the police while she was in the house because she was scared.

The appellant urges that in view of all the evidence, the testimony of the prosecutrix "was so laden with contradictions, inconsistencies and unbelievable factors that it was clearly insufficient" to sustain the convictions. We do not agree and cannot find from the record before us that the testimony of the prosecutrix was so contradictory as to be of no probative force. cf. *Kucharczyk v. State*, 235 Md. 334. The prosecuting witness in a rape case is not an accomplice, nor do we feel that such witness is an accomplice in an incest or carnal knowledge case.

Therefore her testimony need not be corroborated. See *Leek v. State,* 229 Md. 526. In non-jury trials the weight of the evidence and the credibility of witnesses is for the trial judge to determine. *Dunlap v. State,* 1 Md. App. 444; *Sadler v. State,* 1 Md. App. 383. As the testimony of the prosecutrix had probative force, the trial judge could find from her testimony, if he believed it, as he did, that the appellant had engaged in an act of sexual intercourse with his daughter and that he had assaulted and beat her.

With regard to penetration, the prosecutrix testified that her father put his penis "all the way into me" and that he had his "private" in her. She said that he "raped me," but that he had not completed the act. The appellant concludes from this that she meant there had been no penetration, but it is clear from her testimony that what she meant by her statement that the act had not been completed was that there had not been an emission or "discharge" on the part of the appellant and it is also clear that she knew what emission meant. On a number of occasions in cross-examining her, counsel referred to the acts of the appellant as "intercourse" and "relations" within the sexual connotation. Not only did she testify directly as to a physical act showing, or tending to show, penetration, but we think it clear from the record that she understood the meaning of the words "sexual intercourse" and that counsel for the appellant recognized that she understood them. Had he thought otherwise it could have been brought out in cross examination. Penetration is a detail comprehended within the term. *Robert v. State, supra.* We think the evidence sufficient for the trial court to find that there had been penetration.

As there was evidence, believed by the trial court, either showing directly or supporting a rational inference of the facts to be proved, its judgments on the evidence were not clearly erroneous and we may not set them aside for that reason. *McFadden v. State,* 1 Md. App. 511; Md. Rule, 1086.

The appellant also contends that upon the convictions of incest and carnal knowledge, the offense of assault and battery merged therein. Under the facts here present, however, the assault and battery (the slapping of the prosecutrix by the appel-

lant) was a separate and distinct offense. Therefore, there was no merger, and the conviction of assault and battery was proper.[2] See *Cottrell v. State,* 1 Md. App. 520.

*Judgments affirmed.*

2. In view of our finding, we do not reach the question whether an assault and battery is necessarily committed by the mere act of sexual intercourse essential to the offenses of incest and carnal knowledge. Unlike the offense of rape, where there is a merger of the assault into the rape when the facts used to establish the assault are essential elements in establishing the greater offense of rape, *Green v. State,* 243 Md. 75, force is not an essential element of either incest or carnal knowledge, the crimes being complete (the necessary elements being otherwise present) when the act of sexual intercourse is performed, even if freely and voluntarily on the part of a female legally able to consent.

We note that there was a count charging assault and battery in each of indictments Nos. 31410 and 31411. As shown by the transcript, the trial court rendered a verdict of not guilty on the offense of assault and battery under indictment No. 31411 as merging with the offense of assault and battery under indictment No. 31410 (the docket entries do not show the not guilty verdict on the count in indictment No. 31411 but only show a merger into the assault and battery count under indictment No. 31410). These offenses did not merge, but, as the counts charged the same offense, they were duplicitous. See *Gatewood v. State,* 244 Md. 609. No matter what the reasons of the trial court, the verdict of not guilty on the assault and battery count under indictment No. 31411 was proper and the appellant was not prejudiced. For a discussion of the modern doctrine of merger see *Tender, etc. v. State,* 2 Md. App. 692 and *Chittum v. State,* 1 Md. App. 205.